[No. 2082]

MRS. J. T. DARROUGH, ADMINISTRATRIX OF THE
ESTATE OF J. T. DARROUGH, DECEASED, RESPON-
DENT, v. THE NEVADA MILLING AND ORE
PURCHASING COMPANY (A CORPORATION),
APPELLANT.

[140 Pac. 724]

1. CORPORATIONS—REPRESENTATION BY OFFICERS AND AGENTS.
    In an action against a corporation upon a note, defended
    upon the ground that the person executing the note was not its
    president, either de jure or de facto, because not a stockholder,
    evidence held to sustain a finding that he was a stockholder and
    president with authority to execute the note.

APPEAL from the Fifth Judicial District Court, Nye
County; Mark R. Averill, Judge.

Action by Mrs. J. T. Darrough, administratrix, against
the Nevada Milling and Ore Purchasing Company (a cor-
poration). From a judgment for plaintiff, defendant
appeals. **Affirmed.**

P. E. Keeler, for Appellant.

F. K. Pittman, for Respondent.

By the Court, MCCARRAN, J.:

In this action Mrs. J. T. Darrough, as administratrix of
the estate of J. T. Darrough, deceased, sued to recover
$4,000 loaned by her deceased husband to C. S. Lemon, as
president of the Nevada Milling and Ore Purchasing
Company, a New Jersey corporation. From the judg-
ment of the trial court in favor of respondent, and
from the order of that court denying appellant's motion
for a new trial, appeal is taken.

It is the contention of appellant herein that C. S.
Lemon was not the president of the Nevada Milling and
Ore Purchasing Company, either de facto or de jure, for
the reason that no shares of stock had been issued to
C. S. Lemon and, under the laws of New Jersey, the hold-
ing of stock in a corporation is made a prerequisite to
qualification for office in the corporation.

It is admitted by appellant that the money was loaned

by respondent to C. S. Lemon, and that the note given in security for the loan was signed by C. S. Lemon, as president of the Nevada Milling and Ore Purchasing Company. They contend, however, that although the money borrowed by Lemon from J. T. Darrough was used in the construction of a mill at Manhattan, nevertheless the appellant company was not liable for the loan for the reason that Lemon was an independent contractor, and was constructing the mill under an agreement with appellant company to turn the same over to appellant company when it was completed. It is the contention of the appellant that the mill, never having been completed by Lemon, was never turned over by Lemon to the appellant company, and was never accepted by the appellant company.

The uncontradicted testimony of Mrs. Davidson, bookkeeper for the appellate company and employed by C. S. Lemon, president and general manager of the company at Manhattan, is to the effect that the money borrowed from Darrough was used in paying off debts incurred in the construction of the mill, and for labor performed in and about the same. In that respect she testified as follows:

"Q. Were you working for said company during the month of November, 1907? A. Yes.

"Q. If you answer the preceding question in the affirmative, state whether or not you are familiar with the execution of a note of $4,000 on the 6th day of November, 1907, in favor of J. T. Darrough, for money loaned to the company for paying the debts of the company? A. Yes.

"Q. If you answer the preceding question in the affirmative, state the facts within your own knowledge concerning the execution of said note. A. I know within my own knowledge Charles S. Lemon borrowed from J. T. Darrough for the use of the company in paying its debts, and defraying the expenses of said company, and the money was used for that purpose.

"Q. If you know, state what was done with the money received from J. T. Darrough in consideration of the

execution of said note? A. It was used for defraying the expenses of the company and paying its debts. * * *

"Q. State what authority, if you know, the party executing said note had for executing the same on behalf of said Nevada Milling and Purchasing Company? A. Charles S. Lemon negotiated and made contracts for the purchasing of all ore for said company, and bought all the machinery for the company, and fitted the entire mill complete, and hired all men, and he was the only official of said company at that time in Manhattan."

At the trial of the cause in the lower court the appellant herein introduced in evidence certain pages of the minute book kept by the corporation, and respondent introduced the remainder of said book in support of her contention. From the record it appears that the minute book introduced in evidence is a bound volume, the pages which are firmly fastened, constituting one book or volume. This is significant only in so far as it indicates that certain minutes, although not signed by the secretary, are, however, in the same volume in which other minutes appear duly signed. It appears from this record that the first meeting of the stockholders of the Nevada Milling and Ore Purchasing Company was held at Camden, New Jersey, March 25, 1907, and at that meeting the stockholders passed a resolution and caused the same to be entered upon the minutes, which resolution is as follows:

"Whereas, Clifford McClellan and Chas. S. Lemon have offered to sell to this company property as follows: The use of the Griffin process for saving gold and silver, also certain valuable contracts in hand including a contract with Douglas and Kendall, leases for the treating of ores now on their dumps. Also, the Manhattan Mining Company, Chipmonk Mining Co., The Original Manhattan Mining Company, The Manhattan Consolidated Mining Company, and the Seyler-Humphreys Mining Company, all bearing date of January 15, 1907. Also, buildings and all requisite machinery to complete and operate a mill of at least nine stamps together with mill site and water rights for same; in consideration of the issue of stock of

this company to the amount of one hundred thousand dollars ($100,000), par value, and whereas, it appears to the stockholders that such property is necessary for the business of this company, and that the same is of the value of one hundred thousand dollars ($100,000); resolved, that the board of directors of this company be and they are hereby authorized and directed to purchase the said property above mentioned for the said price and to issue said stock in payment thereof; *provided*, that in the judgment of the board of directors, the said property is of the value above stated.    Resolved, that the board of directors be, and they hereby are, authorized and directed to accept said property as full payment of the subscription for stock of the incorporators, and to issue full-paid stock to the incorporators, or their assigns, to the amount of their respective subscriptions."

Following the meeting of the stockholders, and on the same date, the directors held a meeting, at which meeting F. R. Hansell was elected president and George H. Martin was elected secretary, and at the same meeting the board of directors, pursuant to the authorization passed by the stockholders, adopted a resolution and caused the same to be entered upon their minutes, part of which is as follows:

"Resolved, that this company accept the offer of Clifford McClellan and C. S. Lemon to sell to this company the property described in the resolution of the stockholders passed March 25, 1907, authorizing the purchase, and the board of directors do hereby adjudge and declare that said property is of the fair value of one hundred thousand dollars, and that the same is necessary for the business of this company.  *  *  *  Further resolved, that the president and the treasurer be, and they hereby are, authorized and directed to issue to the order of said vendors the full-paid capital stock of this company to the aggregate amount of one hundred thousand dollars, as provided in said agreement."

The waiver of notice, as signed by the directors and filed in the minutes of the meeting of March 25, at which

meeting the foregoing resolution was passed, shows that the directors' meeting was held for the purpose of electing officers and to authorize the purchase of property necessary for the business of the company.

The total authorized capital stock of the company, according to its articles of incorporation, was $100,000, and, as appears from the foregoing resolution passed by the stockholders of the corporation at their first meeting, and by the directors of the corporation at the first meeting of their board, the entire authorized capital stock of the company was directed to be issued to McClellan and Lemon, the vendors, in payment for the property mentioned in the resolution.   This resolution was passed by the stockholders, at their first meeting, and designated the property as the Griffin process for saving gold and silver, contract with Douglas and Kendall for treating ores on the dumps of their mining property, contracts with the Manhattan Mining Company, the Chipmonk Mining Company, the Original Manhattan Mining Company, the Manhattan Consolidated Mining Company, and the Seyler-Humphreys Mining Company, also a mill site and water rights for the same, and buildings and requisite machinery to complete and operate a mill of at least nine stamps.

The president and treasurer being, by the board of directors, authorized and directed to issue the full capital stock of the company, amounting to $100,000, to Lemon and McClellan, the presumption must be that the officers of the corporation did as they were directed to do by their board of directors, and it must reasonably follow that the entire capital stock of the corporation was issued to McClellan and Lemon, pursuant to the direction of the board of directors; hence, it is manifest that C. S. Lemon became the holder of stock in the corporation on the 25th day of March, 1907.   Moreover, the stockholders of the corporation recognized C. S. Lemon as a holder of stock, for it appears that at 12 o'clock on the same day on which the foregoing transactions took place, to wit, the 25th day of March, a special meeting of

the stockholders of the company was held, at which special meeting the resignations of F. R. Hansell, as president, and George H. B. Martin, as secretary and treasurer, were presented and on motion accepted by the company, and at the same time Charles S. Lemon, Clifford McClellan, and Charles A. Porter were nominated directors of the company to serve for the unexpired terms of the directors resigned. It further appears that at 2:30 p. m. on the same day, to wit, the 25th day of March, 1907, pursuant to waiver of notice signed by all the directors, a directors' meeting was held, at which meeting Mr. Charles S. Lemon was elected president.

Prior to the election of Lemon as president of the corporation it appears that an agreement for the purchase of property was entered into between Lemon and McClellan, as vendors, and the Nevada Milling and Ore Purchasing Company, acting by and through F. R. Hansell, its president, and George H. B. Martin, its secretary, and part of which agreement is as follows:

"Whereas, the board of directors of the company have ascertained, adjudged, and declared that the said property and rights are of the fair value of one hundred thousand dollars ($100,000), and that the acquisition thereof is necessary for the business of the company and to carry out its contemplated objects; now, therefore, this agreement witnesseth: That the vendors have sold, assigned, transferred, and set over, and do hereby sell, assign, transfer, and set over unto the company, its successors and assigns, all their right, title, and interest in and to the following-described property, to wit:  *  *  * Also buildings and all requisite machinery to complete and operate a mill of at least nine (9) stamps together with mill site and water rights for same."

Whatever might be contended by appellant as to the acts of Mr. Lemon being void for want of authority, it cannot, in our judgment, be contended that the acts of the board of directors of the company, of which board of directors F. R. Hansell was president, were other than valid, and the words used in the agreement for the

purchase of the property, as disclosed by the instrument appearing in the minutes, signed by F. R. Hansell as president, and as heretofore set forth in part, are words signifying conveyance, and cannot, in our judgment, be viewed in any other light than as an absolute conveyance of the property enumerated in the agreement from McClellan and Lemon, as vendors, to the Nevada Milling and Ore Purchasing Company, appellant herein.

The contention of appellant as to the acts of Lemon being void for the reason that he was not a stockholder of the corporation, and hence could not legally hold office as president, is in our judgment not well founded in view of the minutes of the corporation, references to which have heretofore been made. In our judgment, Lemon was undoubtedly a holder of stock in the corporation on the 25th day of March, 1907. But, whether Lemon was or was not the legally constituted president of the corporation, the transaction between Lemon and McClellan, as vendors, and the appellant corporation was unquestionably completed on the 25th day of March. Prior to the time at which Lemon took office as president, the property as enumerated in the several instruments found in the minutes had been offered to the stockholders at their meeting by Lemon and McClellan, as vendors. The stockholders of the corporation recommended that the board of directors purchase the property and issue the entire paid-up capital stock of the corporation in payment; the board of directors in turn declared the property to be worth the sum of $100,000, and directed the issuance of the full paid-up capital stock of the company, to the aggregate amount of $100,000, to Lemon and McClellan.

The contention of the appellant company as to Lemon being an independent contractor in the construction of the mill, and that the mill was never taken over by the company from Lemon is, in our judgment, not well founded in view of the resolution passed by the board of directors and appearing in the minutes of the company and of date of September 4, 1908, in which resolution the

following appears: "Whereas, the said company is the owner of a certain ten-stamp mill in the town of Manhattan, county of Nye, State of Nevada, commonly known as the 'Lemon Mill'; and whereas, the company has at and before the execution of this agreement with cash contributed or advanced to it, paid in full all labor claims against said mill so that all labor liens against said mill may be forthwith released;   *   *   *   and whereas, the company has in like manner furnished a bond of a duly qualified surety company for the release of all attachments against the said mill and furthermore will, after the execution hereof, make any necessary arrangements to provide like bonds to relieve the said mill from any attachments to be levied against it hereafter on account of the company's indebtedness so that the lessee, in the agreement hereinafter mentioned, may have uninterrupted possession and control of said premises during the term of said agreement."

By the resolution as it appears in the minutes of the corporation, of which the foregoing is a part, it is apparent that the corporation recognized liens against the mill and liquidated the same as debts against the corporation incurred under the direction and management of Charles S. Lemon. Moreover, they expressly declared their ownership of the mill, thereby declaring that the mill, although not completed, was built by Lemon, acting for and in behalf of the company.

Bernard Ruckdeschel, one of the principal witnesses for the appellant company, testified in his deposition relative to purchasing certain lien claims against the Lemon mill, and in that respect the witness said: "I consulted the attorney for the company because I was not willing to make any move towards purchasing those claims unless I was assured that the company recognized them as absolute and exclusive first liens against its property."

It appears from the minutes of the corporation that attorney Frederick L. Berry, of Tonopah, was by resolution made the fiscal agent for the corporation in the State of Nevada, and, as appears from the record, he was later

made attorney for the corporation to represent it in certain suits in which the corporation was made defendant and in which labor liens were filed against the Lemon mill, as the property of appellant company. The deposition of Frederick L. Berry was offered in behalf of the appellant company in the trial court, and in that deposition he testifies as follows:

"Q. Did you know one Charles S. Lemon? A. Yes.

"Q. What connection did he have with the property on which the liens were placed [referring to the case of *Giffen* v. *Nevada Milling and Ore Purchasing Co.*]? A. He was the manager of said property referred to in question 19.

"Q. Was he the manager of the place and have complete charge of said property? A. Yes.

"Q. Did he ever admit to you the correctness of claims as set forth in plaintiff's complaint [referring to *Veith* v. *Nevada Milling and Ore Purchasing Co.*]? State where, when, and under what conditions it was. Answer fully. A. He did. Early in the month of April, 1908, at Manhattan, Nevada, in what was known as the Patterson-Mikulich building, he exhibited to me his time books and books of account, checking over each item mentioned therein, and, after devoting at least two hours thereto, stated that the claims were correct. This statement was made in the presence of Bernard Ruckdeschel and Horace G. Williams, who were then and there present giving the matter their undivided attention.

"Q. In what capacity was he acting when he made statements as set forth in your answer to question 21? A. He was acting as manager of the Nevada Milling and Ore Purchasing Company."

In accordance with the by-laws of the company the president was invested with the general and active management of the business of the company and was empowered to execute bonds, mortgages, and other contracts under the seal of the company.

In the suits commenced for the foreclosure of labor

liens filed against the Lemon Mill, the appellant company appeared and filed its pleadings in defense thereto, and in each instance C. S. Lemon, in verifying the pleadings in behalf of the appellant company, made oath that he was the president of the same, and in each instance Mr. Frederick L. Berry, the duly authorized agent for the appellant company, appeared as attorney for the company in the presentation of its pleadings and defenses.

The whole record discloses the acquiescence on the part of the appellant company in the acts of C. S. Lemon. Moreover, the record discloses that C. S. Lemon, at the time of his election as president of the corporation, was unquestionably a holder of stock in the corporation. As president of the corporation he took up his headquarters in the town of Manhattan for the purpose of generally managing the affairs of the corporation, and when the property which he was constructing became involved in litigation growing out of labor liens, the company assumed the responsibility, and, as its resolution shows, paid in full all labor claims against the mill known as "the Lemon Mill," and, as is disclosed by the resolution, these labor liens were paid with cash "contributed or advanced to the company."

The testimony of Mrs. Davidson is to the effect that the money borrowed from J. T. Darrough, of whose estate the respondent is the duly authorized administratrix, was "for the use of the company in paying its debts and defraying the expenses of said company, and the money was used for that purpose." The loan was negotiated by C. S. Lemon, as president of the appellant company. The money was secured by a note signed by the appellant company, by C. S. Lemon, president, and these acts of Lemon were performed during the time at which the company, by resolution duly adopted by its board of directors, made open declaration, by filing its list of officers with the secretary of state of the State of Nevada, that Charles S. Lemon was its duly elected and qualified president.

The judgment of the lower court should be affirmed. It is so ordered.

## ON PETITION FOR REHEARING

*Per Curiam:*

Petition for rehearing denied.